Johnson, C. J. The plaintiffs in error urge two several objections to the judgment and proceedings in the court below. The first denies the jurisdiction of the court, and the second questions the propriety of the instructions. It is contended that the circuit court, upon an appeal from a justice of the peace, cannot lawfully take cognizance of a subject matter that is not embraced within the constitutional jurisdiction of the justice. This proposition we consider clear and unquestionable, and consequently the only inquiry that remains is as to the jurisdiction of the justice. The suit is based upon two separate instruments, each of which is under one hundred dollars, though the sum found due exceeds that limit; and it is upon this ground that it is insisted there is an end of the jurisdiction. The question here presented cannot now be regarded as open to controversy. The case of Berry vs. Linton, (1 Ark. R. 252,) is conclusive of the question. It was there expressly decided that it is not the aggregate amount of the several demands, but the sum due upon each, that constitutes the true sum in controversy. The necessary consequence of this doctrine is, that, although the judgment of the justice shall exceed one hundred dollars, yet the jurisdiction is not ousted in case that no one of the demands shall exceed that sum. In respect to the other point raised in the case, it was admitted by the defendant in error that the instruments sued upon were given for the hire of a negro, by the plaintiffs, from Claud, the assignor, from the 4th of February, 1846, to the 25th of December, of the same year; that, on the 2d day of May, whilst the negro was in the possession of the plaintiffs, said negro was drowned. It was further admitted, that, on the day the negro was drowned, he was not engaged in any business for the plaintiffs, but that he was left to employ his time as he pleased for the day. The court, upon this branch of the case, instructed the jury that the evidence adduced was not sufficient to authorize a deduction from the notes sued on, on the ground of a partial failure of the consideration for which they were given, and that the death of the negro, after he was hired and before the expiration of the time for which he was hired, did not in law authorize the jury to deduct, in behalf of the appellees in that court, any part of the consideration or amount of the notes in controversy, the appellant being in law entitled to the whole amount which was still unpaid, notwithstanding the death of the negro. This instruction was excepted to at the time it was given, and is now assigned for error in this court. The supreme court of Virginia, in the case of George vs. Elliot, 2 Hen. & Munf. R. 6, held the following language, to wit: “The only question in this case is, whether the plaintiff, should be allowed a credit on his bond from the time of the negro’s death to the end of the year, for so much as the hire for that time would amount to. The court understands the rule to be, where one hires a slave for a year, that if the slave be sick, or run away, the tenant must pay the hire: but, if the slave die, without any fault in the tenant, the owner, and not the tenant, should lose the hire from the death of the slave, unless otherwise agreed upon. By pursuing this rule, the act of God falls upon the owner, on whom it must have fallen if the slave had not been hired; from which time it would be unreasonable to allow the owner hire. Hire! for what? For a dead negro ? It would be rigid enough in the case of a special agreement: but, where there is no such special agreement, to insist upon the hire appears to this court unjust in the extreme. See 1 Ruth. Inst. 250, 251. 1 Fondbl. Eq. 376. Powell on Contracts, 446.” The same doctrine was recognized in North Carolina, in the c.ase of Williams vs. Holcomb, (1 N. C. L. R. 365,) and also in South Carolina, in the case of Bacot vs. Parnell, (2 Bailey’s R. 424.) The case decided in South Carolina was an action brought upon a promissory note for the hire of a slave for one year. The slave died within the year, and the defendant claimed an apportionment by way of discount, which was allowed by the court below. The court, after referring to Byrd vs. Boyd, 4 McCord’s R. 246. George vs. Elliot, 2 Hen. & Munf. 5. Riply vs. Wightman, 4 McCord’s R. 447, observed that a contract of hiring was generally an entire contract, but in certáin cases an apportionment is allowed, and that that was one of those cases. In this case the act of God (the death of the slave) has ended the contract of hiring. The owner is entitled to receive, and the hirer is bound to pay, only so much as the hire was worth from the commencement of the hiring until the slave’s death. The court of appeals of Kentucky ruled otherwise in the cases of Harrison vs. Murrell, 5 Monroe’s R. 359,) and S. P. Redding vs. Hall, (1 Bibb’s R. 536.) In the case of Harrison vs. Murrell, Harrison hired of Murrell two slaves, for one year, for $ 160, and covenanted to pay tbe amount at a specified time. The negroes had been in his possession but a short time when one of them died. After the time of payment Murrell sued on the covenant, and recovered the full amount of the hire. Harrison filed a bill, and obtained an injunction against the judgment; but the circuit court was of opinion that no deduction ought to be made, and dissolved the injunction and dismissed the bill. The court, by Ousley, J., said: “ The principle is not perceived upon which Harrison can be relieved from any part of the hire which he covenanted to pay for the negroes. Though it may, at first blush, seem hard that Harrison should be compelled to pay hire for the negro that died before the expiration of the term for which' he was hired, it will, upon mature reflection, be found not to be unjust in Murrell to exact the full hire of the negro. The uncertainty of the negro’s life was equally known to both Harrison and Murrell when the contract for hire was entered into between them. "With that knowledge, it was competent for them to contract in the way most acceptable to themselves, and, when fairly made, the court possesses no power to alter or change the import of the contract.” " This case is predicated upon the. idea that the contract of hiring is entire,, and that, inasmuch as the uncertainty of the negro’s life was equally known to both parties, therefore the hirer took that risk upon himself in the absence of an express contract to the contrary. The doctrine of entire contracts, as it formerly prevailed, has been much softened and relaxed in modern times, and we are clearly of opinion that the principles of e'quity have been greatly advanced by such relaxation. It is not only unjust that the hirer should be held bound for the hire accruing after ■ the death of the negro, but it is not in accordance with the understanding of the parties to the contract. Suppose, for example, that a party should hire a negro, for a year, for the sum of one hundred and fifty dollars, and that he should die the next day after the contract was made: would it not be flatly absurd, as well as shocking to our sense of justice and propriety, to hold that he would be liable for the full amount stipulated for the year? We have no hesitation in saying that such would be the conclusion of the mind of every one, and that so monstrous a notion could rest alone upon the sheerest technicality. We are, therefore, clearly of opinion that the circuit court erred in the instruction to the jury. There is not a scintilla of evidence going to show that the negro came to his death either by the fault or negligence of the hirer; and in such case we think it clear that he is entitled to a deduction for the residue of the term after his death. The judgment of the circuit court, for this error, is, therefore, reversed, and the cause remanded to be proceeded in according to law, and not inconsistent with this opinion.